Stephen H. Galloway, OSB No. 093602
stephen.galloway@stoel.com
Elliott J. Williams, OSB No. 144835
elliott.williams@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEVIN NESBIT, | Case No.: 3:19-cv-00104-MO |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| KAY ERICKSON, director of the Oregon Employment Department; DOES 1-4, | |
| Defendants. | |

Plaintiff Kevin Nesbit alleges as follows:

## THE PARTIES

1. Kevin Nesbit is an individual residing in the state of Oregon.

2. Defendant Kay Erickson is the Director of the Employment Department of the state of Oregon (the "Agency").

3. Does 1-4 are, or at the relevant time were, employees of the state of Oregon who, upon information and belief, work in the Agency in various capacities, including without limitation conducting investigations into disputed cases before the Agency, presenting evidence in administrative hearings for disputed cases before the Agency, presiding over administrative

Page 1   -   SECOND AMENDED COMPLAINT

hearings for disputed cases before the Agency, evaluating requests that the Agency reconsider its actions, and/or supervising Agency officials.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over violations of the U.S. Constitution pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Kay Erickson and Does 1-4 because at the relevant time each one resided and worked in Oregon, and upon information and belief continues to do so.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because each defendant resides in this district as provided by 28 U.S.C. § 1391(c)(1). Venue is also proper under 28 U.S.C. § 1391(b)(2) because the facts alleged herein occurred entirely within this district.

## FACTUAL ALLEGATIONS

7. These allegations are made upon information and belief unless indicated otherwise.

8. Kevin Nesbit was incarcerated between November 23, 2009 and December 7, 2009 (the "**First Incarceration Period**") and again between April 2, 2012 and January 22, 2016 (the "**Second Incarceration Period**").

9. Prior to the First Incarceration Period and thereafter until April 2010 (the "**2010 Benefits Period**"), the Agency received one or more requests for unemployment benefits and periodic reports relating to such benefits from someone claiming to be Kevin Nesbit (the "**Unknown Nesbit**") and paid unemployment benefits (the "**2010 Contested Benefits**") to that person between February 2010 and April 2010.

10. Between February and August 2011 (the "**2011 Benefits Period**"), the Agency received a request for unemployment benefits from one or more persons claiming to be Kevin

Nesbit and credited unemployment benefits to that one or more persons (the "**2011 Contested Benefits**," together with the 2010 Contested Benefits, the "**Contested Benefits**") by paying some benefits and using some benefits to offset Kevin Nesbit's alleged liability for the 2010 Contested Benefits.

11. After the 2010 Benefits Period, the Agency decided that the 2010 Contested Benefits that it had paid to the Unknown Nesbit should not have been paid, and it attempted to recover the 2010 Contested Benefits from the real Kevin Nesbit. After the 2011 Benefits Period, the Agency decided that the 2011 Contested Benefits that it paid to one or more persons claiming to be Kevin Nesbit should not have been paid and attempted to recover the 2011 Contested Benefits from the real Kevin Nesbit.

12. The Agency's efforts to recover the Contested Benefits continued through 2019, including steps to offset future unemployment benefits, to obtain a writ of garnishment against Kevin Nesbit for the Contested Benefits, and ultimately to garnish Kevin Nesbit's wages in partial satisfaction of his alleged liability for the Contested Benefits.

13. Kevin Nesbit has opposed the Agency's efforts to recover the Contested Benefits and to garnish his wages through administrative proceedings and by requesting one or more investigations of the Agency's actions regarding the Contested Benefits. During the administrative proceedings and in the investigation requests, Kevin Nesbit provided information that his personal identification, and bankcards used to receive unemployment benefits ("Reliacards"), were stolen prior to or during the 2010 Benefits Period, that he did not make periodic reports for unemployment benefits during the 2010 Benefits Period, and that he did not receive any unemployment benefits during the 2010 Benefits Period.

14. In further detail, on or around April 2010, Kevin Nesbit informed the Agency that he had not received or used any of the 2010 Contested Benefits. Ms. Rose Bidney and Doe 1, each in an individual capacity and as an employee of the Agency, investigated the 2010

Contested Benefits and the information submitted by Kevin Nesbit. Ms. Bidney and Kevin Nesbit participated in a telephonic hearing before ALJ Arlin Crisco, an administrative hearing officer for the Agency, regarding the 2010 Contested Benefits (the "**Benefits Hearing**").

15. During that hearing, Ms. Bidney represented to ALJ Crisco that there existed no fewer than four Reliacards that were mailed to Kevin Nesbit during or prior to the 2010 Benefits Period (the "Reliacard Evidence"). Kevin Nesbit testified that he did not request, nor did he receive, any Reliacards other than the one in his possession. Kevin Nesbit was not provided any information about the existence of these Reliacards in advance of the Benefits Hearing and did not have an opportunity to prepare a response to this evidence.

16. During that hearing, Ms. Bidney represented to ALJ Crisco that there existed bank statements corresponding to the 2010 Contested Benefits that documented deposits and transactions showing that Kevin Nesbit received and used the 2010 Contested Benefits ("Bank Statements"). During the Benefits Hearing, Kevin Nesbit testified that he had not received said Bank Statements. Further, Kevin Nesbit did not receive a copy of the Bank Statements in advance of the Benefits Hearing, and was not provided with specific information about the deposits or transactions including their date of occurrence, and did not have an opportunity to prepare a response to this evidence.

17. During the Benefits Hearing, ALJ Crisco overruled Kevin Nesbit's objections regarding the Reliacard Evidence and the Bank Statements, allowed Ms. Bidney to represent orally the contents of the Reliacard Evidence and the Bank Statements, and assured Kevin Nesbit that he could review the Reliacard Evidence and the Bank Statements on appeal. To date, Kevin Nesbit still has not received the Reliacard Evidence or the Bank Statements. Following the Benefits Hearing, ALJ Crisco issued a determination ruling that Kevin Nesbit had received the 2010 Contested Benefits and that his defenses were not credible.

18. On or around March 29, 2012, the Agency decided that the 2011 Contested Benefits should not have been credited to one or more persons claiming to be Kevin Nesbit. Kevin Nesbit requested a hearing regarding the 2011 Contested Benefits but the Agency initially denied receiving his timely appeal and then, after acknowledging his timely notice of appeal, scheduled a hearing during his Second Incarceration Period which precluded his attendance and participation.

19. The Agency proceeded to obtain a writ of garnishment and garnished Kevin Nesbit's wages in partial satisfaction of the purported liability for the Contested Benefits. Kevin Nesbit requested that the Agency cease its efforts to collect the Contested Benefits from him and repeatedly requested a fraud investigation on the Contested Benefits ("**Investigation Request**"). Doe 2, both in an individual capacity and as an employee of the Agency, received the request and determined that the Agency should continue its collection efforts ("**Denied Review**").

20. Does 3 and 4, both in an individual capacity and as employees of the Agency, having supervisory capacity within the Agency, are familiar with Kevin Nesbit's efforts to clear himself of any alleged liability for the Contested Benefits, including the Benefits Hearing, the Investigation Request, and the Denied Review. Notwithstanding the lack of evidence that Kevin Nesbit received the Contested Benefits, Does 3 and 4 have decided that the Agency should continue efforts to recover the Contested Benefits from Kevin Nesbit and to deny Kevin Nesbit's requests for evidence or reasoning to support the Agency's determinations regarding the Contested Benefits and have instructed and directed officials of the Agency to do the same.

21. Kay Erickson, both in her individual capacity and as Director of the Agency, has failed to instruct or supervise adequately officials of the Agency, resulting in the Agency's failure to provide due process of law in administrative hearings, including but not limited to the failures of Ms. Bidney, ALJ Crisco, and Does 1, 2, 3, and 4 to provide Kevin Nesbit with evidence that he received or used the Contested Benefits, to provide Kevin Nesbit an opportunity

to respond to that evidence before a fair and impartial adjudicator, to provide Kevin Nesbit a hearing regarding the 2011 Contested Benefits, to consider impartially the Investigation Request, and other failures described above and herein.

## CLAIM FOR RELIEF

### (Violation of Federal Due Process – 42 U.S.C. § 1983)

22. Based on the allegations above, Ms. Bidney, ALJ Crisco, Does 1-4 and Kay Erickson each acted under color of state law and thereby deprived Kevin Nesbit of property without due process of law, in violation of the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 *et seq*.

23. Doe 1 and/or Ms. Bidney caused the deprivation by their acts and/or omissions, including but not limited to by failing to send notices and other information relating to the 2010 Contested Benefits to Kevin Nesbit. Their acts and/or omissions further included failing to serve Kevin Nesbit with evidence that was introduced against him in the Benefits Hearing.

24. ALJ Crisco caused the deprivation by his acts and/or omissions, including but not limited to by failing to send notices and other information relating to the Benefits Hearing to Kevin Nesbit. ALJ Crisco's acts and/or omissions further included relying on evidence in making an adverse determination against Kevin Nesbit without giving Kevin Nesbit an opportunity to see the evidence or respond to it.

25. Doe 2 caused the deprivation by his acts and/or omissions, including but not limited to by ratifying the acts of Ms. Bidney, ALJ Crisco, and Doe 1 by failing to advise the Agency that its efforts to recover the Contested Benefits were violating the constitutional rights of Kevin Nesbit including without limitation by depriving Kevin Nesbit of property without due process of law. Doe 2 also showed a reckless or callous indifference to the acts of Ms. Bidney, ALJ Crisco, and Doe 1 that deprived Kevin Nesbit of his rights under the U.S. Constitution, including by taking his property without due process of law.

26. Does 3 and 4 caused the deprivation by their acts and/or omissions, including but not limited to by knowingly refusing to terminate a series of acts by their subordinates at the Agency that they knew were depriving Kevin Nesbit of his rights under the U.S. Constitution, including by taking his property without due process of law. Does 3 and 4 also failed to act to prevent their subordinates from engaging in conduct, for instance the the Benefits Hearing, the response to the Investigation Request, and the Denied Review, that deprived Kevin Nesbit of his rights under the U.S. Constitution, including by taking his property without due process of law. Does 3 and 4 also showed a reckless or callous indifference to the acts of Ms. Bidney, ALJ Crisco, and Does 1 and 2 that deprived Kevin Nesbit of his rights under the U.S. Constitution, including by taking his property without due process of law.

27. Kay Erickson caused the deprivation by her acts and/or omissions, including but not limited to by failing to provide adequate training or supervision to employees at the Agency to prevent employees from causing deprivations of rights under the U.S. Constitution, including the deprivation of rights suffered by Kevin Nesbit, including by taking his property without due process of law. Kay Erickson caused the deprivation by recklessly disregarding and failing to mitigate known errors in the Agency's systems—both technological and human—for tracking and investigating when unemployment benefits should be paid, recovered, or reviewed, causing deprivations of rights under the U.S. Constitution, including the deprivation of rights suffered by Kevin Nesbit.  Kay Erickson caused the deprivation by her acts and/or omissions, including but not limited to failure to instruct and supervise Agency employees in basic requirements of due process, including sending notices and other case information to the person whose interests are being investigated or determined, including Kevin Nesbit with respect to the Benefits Hearing and the Benefits Investigation.

**PRAYER FOR RELIEF**

Wherefore Kevin Nesbit requests the following relief,

1. A declaration that Defendants have taken Kevin Nesbit's property without due process of law, in violation of the Fourteenth Amendment of U.S. Constitution;

2. A declaration that Kevin Nesbit is not liable for the Contested Benefits;

3. Preliminary and permanent injunctive relief against Kay Erickson, director of the Oregon Employment Department, enjoining further efforts to collect the Contested Benefits from Kevin Nesbit;

4. Restitution of the amount of Contested Benefits previously garnished from Kevin Nesbit;

5. An award of punitive damages against Kay Erickson and Does 1-4;

6. An award of attorneys' fees to Kevin Nesbit;

7. Any further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury for all issues so triable.

DATED: July 29, 2019.

STOEL RIVES LLP

*/s/ Elliott J. Williams*
Stephen H. Galloway, OSB No. 093602
stephen.galloway@stoel.com
Elliott J. Williams, OSB No. 144835
elliott.williams@stoel.com
Telephone: 503.294.9571

Attorneys for Plaintiff

Page 8  -  SECOND AMENDED COMPLAINT